EXHIBIT A

**IN THE CIRCUIT COURT OF THE THIRTEEN JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

| | |
|---|---|
| JENNIFER MORGAN, on behalf of herself and all others similarly situated, | **Case No. _____** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| FLORIDA HEALTH SCIENCES CENTER, INC. d/b/a Tampa General Hospital, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Jennifer Morgan ("Plaintiff") brings this Class Action Complaint on behalf of herself and all others similarly situated, against Defendant Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital ("Defendant" or "TGH"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to them, which are based on personal knowledge:

## NATURE OF THE CASE

1.      Hospitals and healthcare providers who handle sensitive, personally identifying information ("PII") and protected health information ("PHI") owe a duty to the persons to whom that data relates.

2.      This duty arises based upon the parties' relationship and because it is foreseeable that the exposure of PII or PHI to unauthorized persons—and especially cybercriminals with nefarious intentions—will result in harm to the affected individuals, including, but not limited to, the invasion of their private healthcare matters.

1

3.      This harm manifests in several ways, as the exposure of a person's PII or PHI through a data breach ensures that such person will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives.

4.      Defendant is one of the most comprehensive medical facilities in west central Florida—serving a dozen counties with a population in excess of 4 million. As one of the largest hospitals in Florida, TGH is licensed for 1,040 beds.

5.      Defendant knowingly obtains patient PII and PHI and has a resulting duty to securely maintain such information in confidence.

6.      Plaintiff brings this class action on behalf of patients of Defendant, or otherwise people that are customers of or have their records collected by Defendant, whose PII and/or PHI was accessed and exposed to unauthorized third parties during a data breach of Defendant's system that occurred between approximately May 12 and May 30, 2023 (the "Data Breach").

7.      Despite the fact that Defendant became aware of the Data Breach on or about May 31, 2023, and allegedly finalized its investigation of the Data Breach by June 2, 2023, Defendant failed to notify Plaintiff and Class Members *until* July 28, 2023, when it began sending notification letters out by mail.

8.      Plaintiff, on behalf of herself and the Class as defined herein, brings claims for negligence, breach of implied contract, unjust enrichment, and violation of the consumer protection laws of Florida, seeking actual, compensatory, punitive, and nominal damages, with attorneys' fees, costs, and expenses, and appropriate injunctive and relief.

9.      Based on the public statements of Defendant to date, a wide variety of PII and PHI was implicated in the breach including: names, addresses, phone numbers, dates of birth, Social

Security numbers, health insurance information, medical record numbers, patient account numbers, dates of service and/or limited treatment information used by TGH for its business operations (collectively "PII and PHI").

10.     As a direct and proximate result of Defendant's inadequate data security, its breach of its duty to handle PII and PHI with reasonable care, and its failure to maintain the confidentiality of patients' information, Plaintiff's and Class Members' PII and/or PHI has been accessed by hackers and exposed to an untold number of unauthorized individuals.

11.     Plaintiff and Class Members are now at a significantly increased risk of fraud, identity theft, misappropriation of health insurance benefits, intrusion of their health privacy, and similar forms of criminal mischief, which risk may last for the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy protecting themselves, to the extent possible, from these crimes.

12.     To recover from Defendant for these harms, Plaintiff and the Class seek damages in an amount to be determined at trial, along with injunctive relief requiring Defendant to, at minimum: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) disclose, expeditiously, the full nature of the Data Breach and the types of PII and PHI accessed, obtained, or exposed by the hackers; and (iv) provide lifetime monitoring and identity theft insurance to all Class Members.

## **PARTIES**

13.     Plaintiff Jennifer Morgan is an adult individual who is a resident of Hillsborough County and a citizen of the State of Florida.

14.     Plaintiff Morgan's PHI and PII records were maintained within Defendant's networks and servers, as Plaintiff Morgan is patient of TGH.

15.     On or around August 4, 2023, Plaintiff Morgan received a notice letter from Defendant dated July 28, 2023, informing Plaintiff Morgan that her PII and PHI was accessed or exposed to unknown, unauthorized third parties during the Data Breach.

16.     In response and as a result of the Data Breach, Plaintiff and Class Members have spent significant time and effort researching the Data Breach and reviewing and monitoring their accounts for fraudulent activity.

17.     Plaintiff and Class Members suffered actual damages as a result of the failures of Defendant to adequately protect the sensitive information entrusted to it, including, without limitation, experiencing fraud or attempted fraud, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of their personal information, and other economic and non-economic harm.  Plaintiff and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identity theft.

18.     As a result of the Data Breach, Plaintiff and Class Members have been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending and is not speculative given the highly sensitive nature of the PII compromised by the Data Breach.

19.     Defendant Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital  is a non-profit corporation incorporated in Florida, with its principal place of business located in Hillsborough County, Florida.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.220 and Fla. Stat. § 26.012(2). The matter in controversy exceeds the sum or value of $50,000.00 exclusive of interest, costs, and attorney's fees.

21.     Defendant is subject to personal jurisdiction in this court because it maintains its principal executive office in Tampa, Florida. Additionally, Defendant is subject to personal jurisdiction in this State because it is a Florida corporation and a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in this State.

22.     Venue in this court is proper because Plaintiff resides here, Defendant does business here, and the complained of conduct of Defendant occurred here.

## FACTUAL BACKGROUND

**A.      Defendant Knew the Risks of Storing Valuable PII and PHI and the Foreseeable Harm to Victims**

23.     At all relevant times, Defendant knew it was storing and permitting its internal networks and servers to transmit valuable, sensitive PII and PHI and that, as a result, Defendant's systems would be attractive targets for cybercriminals.

24.     Defendant also knew that any breach of its systems, and exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose PII and PHI was compromised, as well as intrusion into their highly private health information.

25.     These risks are not merely theoretical; in recent years, numerous high-profile breaches have occurred at businesses such as Equifax, Yahoo, Marriott, and many others.

5

26.     PII has considerable value and constitutes an enticing and well-known target to hackers. Hackers easily can sell stolen data as a result of the "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[1]

27.     PHI, in addition to being of a highly personal and private nature, can be used for medical fraud and to submit false medical claims for reimbursement.

28.     The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities in the United States.

29.     According to the Identity Theft Resource Center, in 2019, there were 1,473 reported data breaches in the United States, exposing 164 million sensitive records and 705 million "non-sensitive" records.[2]

30.     In tandem with the increase in data breaches, the rate of identity theft and the resulting losses has also increased over the past few years. For instance, in 2018, 14.4 million people were victims of some form of identity fraud, and 3.3 million people suffered unrecouped losses from identity theft, nearly three times as many as in 2016. And these out-of-pocket losses more than doubled from 2016 to $1.7 billion in 2018.[3]

31.     The healthcare industry has become a prime target for threat actors: "High demand for patient information and often-outdated systems are among the nine reasons healthcare is now the biggest target for online attacks."[4]

---

[1] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/.
[2] *Data Breach Reports: 2019 End of Year Report*, IDENTITY THEFT RESOURCE CENTER, at 2, *available at* https://notified.idtheftcenter.org/s/resource#annualReportSection.
[3] Insurance Information Institute, *Facts + Statistics: Identity theft and cybercrime*, available at https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft %20And%20Fraud%20Reports,%202015-2019%20(1).
[4] https://swivelsecure.com/solutions/healthcare/healthcare-is-the-biggest-target-for-cyberattacks/.

32.     "Hospitals store an incredible amount of patient data. Confidential data that's worth a lot of money to hackers who can sell it on easily – making the industry a growing target."[5]

33.     The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Defendant's patients especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

34.     As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI records can go from $20 say up to—we've even seen $60 or $70."[6]  A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market, whereas stolen payment card information sells for about $1.[7]

35.     According to Experian:

> Having your records stolen in a healthcare data breach can be a prescription for financial disaster. If scam artists break into healthcare networks and grab your medical information, they can impersonate you to get medical services, use your data open credit accounts, break into your bank accounts, obtain drugs illegally, and even blackmail you with sensitive personal details.
>
> ID theft victims often have to spend money to fix problems related to having their data stolen, which averages $600 according to the FTC. But security research firm Ponemon Institute found that healthcare identity theft victims spend nearly $13,500 dealing with

---

[5] *Id.*

[6] IDExperts, You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows: https://www.idexpertscorp.com/knowledge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat.

[7] PriceWaterhouseCoopers, *Managing cyber risks in an interconnected world*, Key findings from The Global State of Information Security® Survey 2015: https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

their hassles, which can include the cost of paying off fraudulent medical bills.

Victims of healthcare data breaches may also find themselves being denied care, coverage or reimbursement by their medical insurers, having their policies canceled or having to pay to reinstate their insurance, along with suffering damage to their credit ratings and scores. In the worst cases, they've been threatened with losing custody of their children, been charged with drug trafficking, found it hard to get hired for a job, or even been fired by their employers.[8]

36.     The "high value of medical records on the dark web has surpassed that of social security and credit card numbers. These records can sell for up to $1,000 online."[9]

37.     According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[10]

38.     Even if stolen PII or PHI does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the

---

[8] Experian, Healthcare Data Breach: What to Know About them and What to Do After One: https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.
[9] https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon.
[10] United States Government Accountability Office, Report to Congressional Requesters, Personal Information, June 2007: https://www.gao.gov/assets/gao-07-737.pdf.

individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

39.    The healthcare sector suffered about 295 breaches in the first half of 2023 alone, according to the U.S. Department of Health and Human Services ("HHS") Office for Civil Rights ("OCR") data breach portal. More than 39 million individuals were implicated in healthcare data breaches in the first six months of the year.

**B.    Defendant Breached its Duty to Protect its PII and PHI**

40.    On May 31, 2023, Defendant detected unusual activity on its computer systems and began an investigation with the assistance of a third-party forensic firm.

41.    On June 2, 2023, Defendant's investigation determined that an unauthorized third party accessed its network and obtained certain files from its systems between May 12 and May 30, 2023.

42.    Defendant reviewed the files involved and determined that some patient information was included. According to Defendant, the information varied by individual, but may have included names, addresses, phone numbers, dates of birth, Social Security numbers, health insurance information, medical record numbers, patient account numbers, dates of service and/or limited treatment information used by TGH for its business operations (collectively the "PII and PHI").

43.    According to public reporting by InfoSecurity Magazine, more than 1.2 million patients were affected by the TGH Data Breach.

44.    Defendant posted a notice to its website (the "Cybersecurity Notice") describing the Data Breach on or around July 19, 2023, however it did not begin notifying affected patients by mail until on or around July 28, 2023.

45.     The Data Breach occurred as a direct result of Defendant's failure to implement and follow basic security procedures, and its failure to follow its own policies, in order to protect its patients' PII and PHI.

46.     Plaintiff received the notice letter from Defendant dated July 28, 2023, advising that Plaintiff was a victim of Defendant's data security failures exposing her PII and PHI.

47.     Like Plaintiff, the Class Members received similar notices informing them that their PII and/or PHI was exposed in the Data Breach.

**C.     Defendant's Representations and Privacy Policies**

48.     Plaintiff was and is very careful about sharing her PII and PHI.

49.     Plaintiff took reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep her PII and PHI confidential and securely maintained, to use this information for related business purposes only, and to make only authorized disclosures of this information.

50.     Defendant made promises and representations to its patients, including Plaintiff and Class Members, that the PII and PHI it collected from them as a condition of obtaining medical services at TGH would be kept safe, confidential, that the privacy of that information would be maintained.

51.     Defendant's privacy policy provides that: "[w]e are committed to protecting the privacy of your health information."[11]

52.     Defendant's privacy policy further states that "[w]e are required by law to maintain the privacy of your PHI and to provide you with notice of our legal duties and privacy practices with respect to your PHI. PHI is information about you, including demographic information, that may identify you and that relates to your health or condition and related health care services."[12]

---

[11] *See* https://www.tgh.org/patients-visitors/joint-notice-privacy-policy.
[12] *Id.*

53.     Plaintiff and Class Members provided their PII and PHI to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

**D.     Plaintiff and Class Members Suffered Damages**

54.     For the reasons mentioned above, Defendant's conduct, which allowed the Data Breach to occur, caused Plaintiff and Class Members significant injuries and harm in several ways. Plaintiff and Class Members must immediately devote time, energy, and money to: 1) closely monitor their medical statements, bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

55.     Once PII or PHI is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Defendant's conduct. Further, the value of Plaintiff's and Class Members' PII and PHI has been diminished by its exposure in the Data Breach.

56.     As a result of Defendant's failures, Plaintiff and Class Members are at substantial increased risk of suffering identity theft and fraud or misuse of their PII and PHI.

57.     From a recent study, 28% of consumers affected by a data breach become victims of identity fraud – this is a significant increase from a 2012 study that found only 9.5% of those

affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.[13]

58.     With respect to health care breaches, another study found "the majority [70%] of data impacted by healthcare breaches could be leveraged by hackers to commit fraud or identity theft."[14]

59.     "Actors buying and selling PII and PHI from healthcare institutions and providers in underground marketplaces is very common and will almost certainly remain so due to this data's utility in a wide variety of malicious activity ranging from identity theft and financial fraud to crafting of bespoke phishing lures."[15]

60.     The reality is that "cybercriminals seek nefarious outcomes from a data breach" and "stolen health data can be used to carry out a variety of crimes."[16]

61.     Health information in particular is likely to be used in detrimental ways – by leveraging sensitive personal health details and diagnoses to extort or coerce someone, and serious and long-term identity theft.[17]

62.     "Medical identity theft is a great concern not only because of its rapid growth rate, but because it is the most expensive and time consuming to resolve of all types of identity theft. Additionally, medical identity theft is very difficult to detect which makes this form of fraud extremely dangerous."[18]

---

[13] *See* https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud.
[14] https://healthitsecurity.com/news/70-of-data-involved-in-healthcare-breaches-increases-risk-of-fraud.
[15] *Id.*
[16] https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon.
[17] *Id.*
[18] https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf.

63.     Plaintiff and the Class members have also been injured by Defendant's unauthorized disclosure of their confidential and private medical records and PHI.

64.     Plaintiff and Class Members are also at a continued risk because their information remains in Defendant's systems, which have already been shown to be susceptible to compromise and attack and are subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect its patients' PII and PHI.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this action pursuant to Florida Rule of Civil Procedure 1.220. individually and on behalf of the following Class:

> All citizens of the State of Florida whose PII and/or PHI was compromised in Defendant's Data Breach that was announced on or about July 19, 2023 (the "Class").

66.     Excluded from the Class is Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

67.     Given Defendant's role as a local provider of healthcare services in Hillsborough County, Florida, more than two-thirds of affected persons of the Data Breach are citizens of the State of Florida.

68.     **Numerosity**. The class described above is so numerous that joinder of all individual members in one action would be impracticable. While Plaintiff is informed and believes that there are likely hundreds of thousands, of members of the Class, the precise number of Class members is unknown to Plaintiff. The disposition of the individual claims of the respective Class Members through this class action will benefit both the parties and this Court. The exact size of the Class

and the identities of the individual members thereof are ascertainable through Defendant's records, including but not limited to, the files implicated in the Data Breach.

69.     **Commonality**.  This action involves questions of law and fact that are common to the Class Members. Such common questions include, but are not limited to:

        a.     Whether Defendant had a duty to protect the PII and PHI of Plaintiff and Class Members;

        b.     Whether Defendant had a duty to maintain the confidentiality of Plaintiff's and Class Members' PHI;

        c.     Whether Defendant breached its obligation to maintain Plaintiff's and the Class Members' medical information in confidence;

        d.     Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' PII and PHI, and breached its duties thereby;

        e.     Whether Defendant failed to properly give notice;

        f.     Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct;

        g.     Whether Plaintiff and Class Members are entitled to restitution or disgorgement as a result of Defendant's wrongful conduct; and

        h.     Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

70.     **Typicality**.  Plaintiff's claims are typical of the claims of the Class Members.  The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same failure by Defendant to safeguard PII and PHI.  Plaintiff and Class Members were all patients of Defendant, each having their PII and PHI obtained by an unauthorized third party.

71.     **Adequacy of Representation**.  Plaintiff is an adequate representative of the Class because her interests does not conflict with the interests of the other Class Members that Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation, including data breach litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed.  Furthermore, the interests of the Class Members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

72.     **Predominance and Superiority**. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

73.     Plaintiff reserves the right to modify, amend, or revise the foregoing class allegations and definitions prior to moving for class certification based on newly learned facts or legal developments that arise following additional investigation, discovery, or otherwise.

## FLORIDA LAW APPLIES TO THE ENTIRE CLASS

74.     Florida substantive laws apply to every member of the Class. Florida's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit Clause, Art. IV. § 1 of the U.S. Constitution. Florida has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and Class Members, thereby creating state interests to ensure that the choice of Florida state law is not arbitrary or unfair.

75.     The application of Florida laws to the Class is also appropriate under Florida's choice of law rules because Florida has significant contacts to the claims of Plaintiff and the proposed Class, and Florida has a greater interest in applying its laws here than any other interested state.

76.     Defendant is a Florida corporation, with its principal place of business in this State. Defendant also owns property and conducts substantial business in this State, and therefore Florida has an interest in regulating Defendant's conduct under its laws. Defendant's decision to reside in Florida, avail itself of Florida's laws, and engage in the challenged conduct from and emanating out of Florida, renders the application of Florida law to the claims herein constitutionally permissible.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE

77.    Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

78.    Defendant owed a duty under common law to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII and PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

79.    Defendant's duty to use reasonable care arose from several sources, including but not limited to those described below.

80.    Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of Defendant. By collecting and storing valuable PII and PHI that are routinely targeted by criminals for unauthorized access, Defendant was obligated to act with reasonable care to protect against these foreseeable threats.

81.    Defendant's duty also arose from Defendant's position as a provider of healthcare. Defendant holds itself out as a trusted provider of healthcare, and thereby assumes a duty to reasonably protect its patients' information.

82.    Indeed, Defendant, as a direct healthcare provider, was in a unique and superior position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

83.    Defendant was subject to an "independent duty" untethered to any contract between Plaintiff and Class Members and Defendant.

84.     Defendant's privacy policy provides that: "[w]e are committed to protecting the privacy of your health information," and that "[w]e are required by law to maintain the privacy of your PHI."

85.     Defendant violated its own policies by actively disclosing Plaintiff's and the Class Members' PII and PHI; by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII and PHI; failing to maintain the confidentiality of Plaintiff's and the Class Members' records; and by failing to provide timely notice of the breach of PII and PHI to Plaintiff and the Class.

86.     Defendant breached the duties owed to Plaintiff and Class Members and thus was negligent. Defendant breached these duties by, among other things:

    a.     mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII and PHI;

    b.     mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

    c.     failing to design and implement information safeguards to control these risks;

    d.     failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures;

    e.     failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

    f.     failing to detect the breach at the time it began or within a reasonable time thereafter; and

g.     failing to follow its own privacy policies and practices published to its patients.

87.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII and PHI would not have been compromised.

88.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered injuries, including:

a.     Theft of their PII and/or PHI;

b.     Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

c.     Costs associated with purchasing credit monitoring and identity theft protection services;

d.     Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.     Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Defendant Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.     The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII and/or PHI being placed in the hands of criminals;

g.    Damages to and diminution in value of their PII and PHI entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;

h.    Continued risk of exposure to hackers and thieves of their PII and/or PHI, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data;

i.    Loss of their privacy and confidentiality in their PII and PHI;

j.    The erosion of the essential and confidential relationship between Defendant – as a health care services provider – and Plaintiff and Class members as patients; and

k.    Loss of personal time spent carefully reviewing statements from health insurers and providers to check for charges for services not received.

89.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been injured as described herein and above, and are entitled to damages, including actual, compensatory, punitive, and nominal damages, in an amount to be proven at trial.

90.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) disclose, expeditiously, the full nature of the Data Breach and the types of PII and PHI accessed, obtained, or exposed by the hackers; and (iv) provide lifetime monitoring and identity theft insurance to all Class Members.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED CONTRACT

91.     Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

92.     When Defendant required Plaintiff and Class Members to supply their PII and PHI, Defendant entered into implied contracts with Plaintiff and Class Members to protect the security of such information.

93.     Defendant collects and uses Plaintiff's and Class Member's PII and PHI for the purpose of treating patients.

94.     Such implied contracts arose from the course of conduct between Plaintiff and Class Members and Defendant.

95.     The implied contracts required Defendant to safeguard and protect Plaintiff's and Class Members' PII and PHI from being compromised and/or stolen.

96.     Defendant did not safeguard or protect Plaintiff's and Class Members' PII and PHI from being accessed, compromised, and/or stolen. Defendant did not maintain sufficient security measures and procedures to prevent unauthorized access to Plaintiff's and Class Members' PII and PHI.

97.     Because Defendant failed to safeguard and/or protect Plaintiff's and Class Members' PII and PHI from being compromised or stolen, Defendant breached its contracts with Plaintiff and Class Members.

98.     Plaintiff and Class Members fully performed their obligations under the implied contracts by supplying their PII and PHI to Defendant and paying Defendant for its services.

99.    As a direct and proximate result of Defendant's breaches of implied contracts, Plaintiff and Class Members sustained damages as alleged herein and will continue to suffer damages as the result of Defendant's Data Breach.

100.   Plaintiff and Class Members have been injured as described herein and above, and are entitled to damages, including actual, compensatory, punitive, and nominal damages, in an amount to be proven at trial.

101.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) disclose, expeditiously, the full nature of the Data Breach and the types of PII and PHI accessed, obtained, or exposed by the hackers; and (iv) provide lifetime monitoring and identity theft insurance to all Class Members.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT

102.   Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

103.   Plaintiff and Class Members conferred a monetary benefit on Defendant when they paid for services from Defendant and/or its agents and in so doing also provided Defendant with their PII and PHI.

104.   In exchange, Plaintiff and Class Members expected to receive from Defendant the services that were the subject of the transactions and should have had their PII and PHI protected with adequate data security.

105.   Defendant appreciated the benefits that Plaintiff and Class Members conferred, and Defendant profited from these transactions and used Plaintiff's and Class Members' PII and PHI for business purposes.

22

106.    Defendant funds its data security measures from revenues derived from the payments made by and on behalf of Plaintiff and Class Members.

107.    Defendant, however, failed to secure Plaintiff's and Class Members' PII and PHI and therefore, did not provide adequate data security in return for the benefits Plaintiff and Class Members provided.

108.    Plaintiff and Class Members expected that Defendant would use a portion of that revenue to fund adequate data security practices.

109.    Defendant acquired Plaintiff's and Class Members' PII and PHI through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

110.    If Plaintiff and Class Members knew that Defendant had not reasonably secured their PII and PHI, they would not have allowed their PII and PHI to be provided to Defendant.

111.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII and PHI.

112.    Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant increased its own profit at the expense of Plaintiff and Class Members by utilizing ineffective security measures.

113.    Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their PII and PHI.

114.    Defendant should not be permitted to retain the money wrongfully obtained Plaintiff and Class Members, because Defendant failed to implement appropriate data security measures.

115.    Plaintiff and Class Members have no adequate remedy at law.

116. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and Class Members sustained damages as alleged herein and will continue to suffer damages as the result of Defendant's Data Breach.

117. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

**FOURTH CAUSE OF ACTION**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. §§ 501.201, *et seq.***

118. Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

119. Plaintiff and Class Members are "consumers" as defined by Fla. Stat. § 501.203.

120. Defendant advertised, offered, or sold goods or services and engaged in trade or commerce directly or indirectly affecting Plaintiff and Class Members.

121. Defendant engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1), including:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' PII and PHI which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

24

c.      Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII and PHI, including duties imposed by Florida's data security statute, F.S.A. § 501.171(2), which was a direct and proximate cause of the Data Breach;

d.      Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII and PHI; and

e.      Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' PII and PHI including by implementing and maintaining reasonable security measures.

122.    These omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' PII and PHI. Plaintiff and Class Members would have discontinued Defendant's access to their PII and PHI had this information been disclosed.

123.    As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII and PHI; overpayment for Defendant's services; loss of the value of access to their PII and PHI; and the value of identity protection services made necessary by the Breach.

124.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including actual damages under Fla. Stat. § 501.211; injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all other similarly situated, prays for relief as follows:

a.      For an order certifying the Class defined above and naming Plaintiff as representatives of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c.      For actual, compensatory, punitive, and nominal damages, in amounts to be determined by the trier of fact;

d.      For an order of restitution, disgorgement, and all other forms of equitable monetary relief;

e.      Injunctive relief as described herein;

f.      Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

g.      Awarding pre-and-post-judgment interest on any amounts awarded; and

h.      Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 1.430 of Florida Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: August 8, 2023                 /s/ Nicholas A. Colella
                                      Nicholas A. Colella
                                      FL Bar No. 1002941
                                      Gary F. Lynch (*pro hac vice* forthcoming)
                                      Jamisen A. Etzel (*pro hac vice* forthcoming)
                                      **LYNCH CARPENTER, LLP**
                                      1133 Penn Avenue, 5th Floor
                                      Pittsburgh, PA 15222
                                      Telephone: (412) 322-9243
                                      Email: nickc@lcllp.com
                                      Email: gary@lcllp.com
                                      Email: jamisen@lcllp.com

                                      Christian Levis (*pro hac vice* forthcoming)
                                      Amanda G. Fiorilla (*pro hac vice* forthcoming)
                                      **LOWEY DANNENBERG, P.C.**
                                      44 South Broadway, Suite 1100
                                      White Plains, NY 10601
                                      Telephone: (914) 997-0500
                                      Email: clevis@lowey.com
                                      Email: afiorilla@lowey.com

                                      Anthony M. Christina (*pro hac vice* forthcoming)
                                      **LOWEY DANNENBERG, P.C.**
                                      One Tower Bridge
                                      100 Front Street, Suite 520
                                      West Conshohocken, PA
                                      Telephone: (215) 399-4770
                                      Email: achristina@lowey.com

                                      *Attorneys for Plaintiff and the Proposed Class*